**\*\*FOR PUBLICATION\*\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
VERNA THOMAS and MOSELL THOMAS,  :
:
                          Appellants,  :     **Civil No. 11-3417 (FLW)**
:
      v.  :     **OPINION**
:
U.S. BANK NATIONAL ASSOCIATION, AS  :
TRUSTEE FOR CSMC MORTGAGE-BACK-  :
THROUGH CERTIFICATES, SERIES 2006-H,  :
:
                          Appellee.  :
_____:

**WOLFSON, United States District Judge:**

On February 28, 2012, I denied the appeal of *pro se* Appellants Verna Thomas and Mosell Thomas ("Appellants"), who sought reversal of the United States Bankruptcy Judge's denial of their motion for reconsideration of the Judge's grant of relief from the automatic bankruptcy stay to the primary mortgage holder on Appellants' home at 43 Winston Drive, Somerset, New Jersey ("the Property"), Appellee U.S. BANK National Association, as Trustee for CSMC Mortgage-back-through Certificates, Series 2006-H ("Appellee" or "U.S. Bank").[1] Appellants now move for reconsideration of my February 28th decision. For the following reasons, Appellants'

---

[1] The motion papers before the Bankruptcy Court make clear that U.S. Bank's servicer, American Servicing Company, moved for relief from the automatic stay on behalf of U.S. Bank. *See See Certification Re Post-Petition Payment History on the Note and Mortgage Dated 11/02/05*, Bankr. Case No. 10-48206-RTL at ¶ 10 (March 3, 2011). However, throughout their papers before this Court, Appellants refer to the Appellee as U.S. Bank. For ease of reference, I do the same.

motion for reconsideration is denied.

## BACKGROUND

As explained in my February 28th decision, Appellants argued in their appeal to this Court that the Helping Families Save Their Homes Act of 2009, Pub.L. No. 111-22, 123 Stat. 1632 (the "Helping Families Act"), precludes mortgagors from instituting a foreclosure action without first granting mortgagees a modification of their mortgages. In light of Appellants' reliance on that Act, and the recent explosion of litigation in this area of the law, the Court finds it helpful to provide further background on the Act and its related foreclosure mitigation programs in this Opinion.

Before delving into the details of the Act, and the foreclosure mitigation programs developed thereunder, I first clarify the difference between a mortgage holder and a servicer of a mortgage loan. Generally, under New Jersey law, a mortgage holder is a lender which owns a homeowner's mortgage whereas a servicer is a separate entity that acts as the mortgage holder's agent to collect payments due on the mortgage. *See US Bank Nat. Ass'n v. Guillaume*, 209 N.J. 449, 472 (2012) (noting that New Jersey's Fair Foreclosure Act, N.J.S.A. 2A:50–53 *et seq.*, defines a "lender" as "any person, corporation, or other entity which makes or *holds* a residential mortgage, and any person, corporation or other entity to which such residential mortgage is assigned," N.J.S.A. 2A:50–55) (emphasis added); *id.* (describing a servicer as one who bears the "responsibility to collect mortgage payments and negotiate with homeowners on [the lender's] behalf"). Here, U.S. Bank is the holder of Appellants' mortgage and Americas Servicing Company is U.S. Bank's servicer. *See Certification Re Post-Petition Payment History on the Note and Mortgage Dated 11/02/05*, Bankr. Case No. 10-48206-RTL at ¶ 10 (March 3, 2011); *Guillaume*, 209 N.J. at 472 (referring to Americas Servicing Company as U.S. Bank's servicer in that case).

### A.     Helping Families Act

Prior to enacting the Helping Families Act, Congress enacted the Emergency Economic Stabilization Act of 2008 (EESA), 12 U.S.C. §§ 5201–5261.  The EESA directed the Secretary of the Treasury to "implement a plan that seeks to maximize assistance for homeowners and use the authority of the Secretary to encourage the servicers of the underlying mortgages . . . to take advantage of the HOPE for Homeowners Program [("H4H")] under section 1715z–23 of this title or other available programs to minimize foreclosures."  *See McInroy v. BAC Home Loan Servicing, LP*, No. 10–4342, 2011 U.S. Dist. LEXIS 49868, 2011 WL 1770947 (D.Minn. May 9, 2011); *Williams v. Timothy F. Geithner*, No. 09–1959, 2009 U.S. Dist. LEXIS 104096, 2009 WL 3757380, at *2 (D.Minn. Nov. 9, 2009).

Not long after the EESA was enacted, in February 2009, President Obama announced the Homeowner Affordability and Stability Plan, *see Help for Homeowners*, The White House Blog, http://www.whitehouse.gov/blog/09/02/18/Help-for-homeowners/, which spawned the Home Affordable Modification Program ("HAMP") managed jointly by the Treasury Department and the Department of Housing and Urban Development ("HUD").  *See Alpino v. JPMorgan Chase Bank, Nat. Ass'n*, 2011 WL 1564114, *2 (D.Mass. Apr. 21, 2011).  HAMP was announced by the Treasury shortly thereafter in March 2009.  *See* U.S. Dep't of the Treasury, Home Affordable Modification Program Guidelines, § VII, 610 (Mar. 4, 2009).  It is one of four foreclosure mitigation programs instituted under the umbrella of the Treasury Department's and HUD's Making Home Affordable program ("MHA").  *See* Fannie Mae, Home Affordable Modification Program Overview, www.eFannieMae.com (April 11, 2012); *see also Bosque v. Wells Fargo Bank, N.A.,* 762 F.Supp.2d 342, 347 (D.Mass. 2011).

A few months following the announcement of HAMP, on May 20, 2009, Congress enacted the Helping Families Act. Section 401(a) of the Helping Families Act includes a sense of Congress provision that discouraged mortgage servicers from initiating foreclosure proceedings until foreclosure mitigation programs like H4H and HAMP were implemented:

> It is the sense of Congress that . . . mortgage servicers should not initiate a foreclosure proceeding or a foreclosure sale on any homeowner until the foreclosure mitigation provisions, like the Hope for Homeowners program, as required under title II, and the President's ''Homeowner Affordability and Stability Plan'' have been implemented and determined to be operational by the Secretary of Housing and Urban Development and the Secretary of the Treasury.

Helping Families Act, 123 Stat. 1632, 1655, Sec. 401(a). The Act further provides, in section 401(e), that homeowners "for whose benefit any foreclosure proceeding or sale is barred under subsection (a) from being instituted . . . should respond to reasonable inquiries from a creditor or servicer during the period during which such foreclosure proceeding or sale is barred." *Id.* at Sec. 401(e).

The HAMP announcement, and subsequent clarifications issued by the departments, made clear that Fannie Mae-approved servicers were required to participate in HAMP for all eligible Fannie Mae and Freddie Mac owned mortgage loans and MBS (mortgage backed securities) pool loans. *See* U.S. Dep't of the Treasury, *Reissuance of the Introduction of the Home Affordable Modification Program, HomeSaver Forbearance™, and New Workout Hierarchy*, Announcement 09-05 R at 1-2 (Apr. 21, 2009). However, servicer participation for non-Fannie Mae, non-Freddie Mac backed loans was optional. *Id.* at 2. Because Fannie Mae and Freddie Mac are Government Sponsored Enterprises (GSEs), non-Fannie Mae, non-Freddie Mac loans are referred to as "Non-GSE Mortgages." *Id.* For consistency's sake, I refer to Fannie Mae and Freddie Mae owned loans

4

as "GSE Mortgages" or "GSE loans." *Accord Ording v. BAC Home Loans Servicing, LP*, Civil Action No. 10–10670–MBB, 2011 WL 99016, *8 (D.Mass. Jan. 10, 2011) (referring to Fannie Mae or Freddie Mac owned loans as "GSE loans").

The Treasury Department issued a uniform guidance for loan modifications on March 4, 2009. Thereafter, on April 6, 2009, the department issued a supplemental directive, providing additional guidance to servicers "for adoption and implementation of the Home Affordable Modification program (HAMP) for mortgage loans that are not owned or guaranteed by Fannie Mae or Freddie Mac (Non-GSE Mortgages)." U.S. Dep't of the Treasury, *Introduction of the Home Affordable Modification Program*, Supplemental Directive 09-01 at 1 (April 6, 2009). The directive explained that "[i]n order for a servicer to participate in the HAMP with respect to Non-GSE Mortgages, the servicer must execute a servicer participation agreement and related documents (Servicer Participation Agreement) with Fannie Mae in its capacity as financial agent for the United States (as designated by Treasury) on or before December 31, 2009." *Id.*

The year following creation of HAMP, in March of 2010, the Department of Housing and Urban Development ("HUD") promulgated regulations instituting the H4H program also referenced in the Helping Families Act. *See* Department of Housing and Urban Development, 75 Fed. Reg. 1691 (Jan. 12, 2010). H4H is a temporary program "that offers to homeowners and existing loan holders (or servicers acting on their behalf), FHA insurance on refinanced loans for distressed borrowers to support long-term sustainable homeownership by, among other things, allowing homeowners to avoid foreclosure." 24 C.F.R. § 257.7. In other words, the program "assists in disputes between homeowners and mortgage companies ....," *Stimus v. CitiMortgage, Inc.*, Civil Action No. 5:10–CV–435(MTT), 2011 WL 2610391, *3 (M.D.Ga. Jul. 1, 2011), by helping

servicers lower interest rates on distressed homeowners' mortgage loans, *see F.T.C. v. Zamani*, No. SACV 09–0977–DOC(MLGx), 2011 WL 2222065, *2-3 (C.D.Cal. Jun. 6, 2011).

### B.   HAMP

HAMP is designed to assist struggling homeowners in obtaining a modification of their existing mortgage loan from their mortgage servicer. *See generally Cave v. Saxon Mort. Svcs.,* Civil Action No. 11-4586, 2012 WL 1957588, *1 (E.D.Pa. May 30, 2012); www.makinghomeaffordable.gov. As noted, Fannie Mae-approved servicers are required to participate in HAMP for eligible GSE loans. *See* Departments of the Treasury & Housing and Urban Development, *What is "Making Home Affordable" all about?*, http://www.makinghomeaffordable.gov/about-mha/faqs/Pages/default.aspx (visited June 19, 2012). However, participation for non-GSE loans is optional. *Id.* Since most cases addressing HAMP deal with the guidelines applicable to non-GSE mortgages, I address that category of mortgages first.

#### 1.   Non-GSE Mortgages

For non-GSE mortgages, a servicer's participation in the program is governed by a set of guidelines (referred to as "the HAMP Guidelines") that apply to those servicers who executed a Servicer Participation Agreement ("SPA") in exchange for federal funds. *See generally Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012). The guidelines can be found in the MHA Handbook, which "is a consolidated reference guide outlining the requirements and guidelines for the Making Home Affordable (MHA) Program for non-GSE mortgages." Program Guidance, https://www.hmpadmin.com/portal/programs/guidance.jsp (visited June 19, 2012).

According to the MHA Handbook, "[t]he MHA reflects usual and customary industry standards for mortgage loan modifications ...." *See* MHA Handbook v. 3.4 at Section 1.1,

6

https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_33.pdf. Furthermore, the MHA Handbook explains that "[a] servicer may not refer any loan to foreclosure or conduct a scheduled foreclosure sale unless and until . . . [t]he borrower is evaluated for HAMP and is determined to be ineligible for the program ...." *Id.* at Section 3.1.1. *See also Parker v. Bank of America, N.A.*, 29 Mass. L. Rptr. 294, *6 (Mass. Super. Ct. 2011). Those servicers that do not comply with the HAMP Guidelines may be held in default of their obligations under the SPA.

Importantly, the SPA inures only to the benefit of the parties who signed the agreement, *i.e.*, Fannie Mae, in its role as the financial agent of the United States, and the servicer. *See In re Bank of America Home Affordable Modification Program (HAMP) Contract Litig.*, Civil Action No. 10-md-02193-RWZ, 2011 WL 2637222 (D.Mass. Jul. 6, 2011); *Newell v. Wells Fargo Bank, N.A.,* No. C 10-05138 WHA, 2012 WL 27783, at *1 (N.D.Cal. Jan. 5, 2012). While the SPA states that both parties' successors-in-interest may be bound by the agreement, those are the only additional entities referenced in the document. It makes no mention of homeowners or mortgagees.

In determining whether a mortgagee is entitled to a HAMP modification, the servicer must engage in a three-step process: First, the servicer must confirm that the mortgagee meets the threshold income and property-related requirements; second, the servicer must calculate a modification using the "waterfall" method that is designed to downwardly adjust the monthly mortgage payment to around 31 percent of the mortgagee's income; and, third, the servicer must apply the net present value (NPV) test to determine if the modification would be more profitable to the servicer than foreclosure. *See Wigod*, 673 F.3d at 557. If the results of the NPV test indicate that it would be more profitable to the servicer to foreclose, the servicer is under no obligation to grant the modification request. *Id. See also Meyer v. Citimortgage, Inc.*, No. 11–13432, 2012 WL

511995, * 5 (E.D. Mich. Feb. 16, 2012) (collecting cases).

### 2. GSE Mortgages

Servicers servicing eligible GSE loans follow similar guidelines for processing HAMP applications, *see* Freddie Mac, Supplemental Directive 09-26 (Nov. 2, 2009) (discussing the initial Treasury Supplemental Directive, U.S. Dep't of Treasury, Supplemental Directive 09-01 (Apr. 5, 2009), which announced the eligibility, underwriting and servicing requirements for HAMP, as applicable to Freddie Mac servicers), although the servicers are bound by certain "HAMP supplemental directives when . . . specifically servicing a Fannie Mae [or Freddie Mac] owned or backed mortgage." *Ording*, 2011 WL 99016 at *8.

More to the point, there are two key differences between GSE and non-GSE loans for purposes of this case. First, there is no SPA for GSE loans—that agreement applies only to non-GSE loans because servicers are not obligated to participate in HAMP when servicing those loans. The SPA is the means by which the servicers may be held accountable.

Second, the NPV test of the HAMP application process differs for GSE loans. For example, in 2009, Freddie Mac required "[s]ervicers to process every modification under HAMP regardless of its Treasury NPV result, unless the Treasury NPV result is negative and the amount of principal forbearance would create an interest-bearing balance with a Mark-to-Market LTV Ratio of less than 100%." *Id.* at 3. That guideline was amended in December of 2009 to create different rules for loans with partial principle forbearance versus those without partial principle forbearance.[2] While I need not repeat the exact amendment here, or note the likely numerous additional differences

---

[2] A forbearance is "a temporary reduction or suspension of payments which must be immediately followed by an arrangement to cure the delinquency." Fannie Mae, *Loan Workout Hierarchy for Fannie Mae Conventional Loans* (Apr. 11, 2012).

between GSE and non-GSE loans, suffice it to say that servicers of GSE loans may be required to modify a loan even when the NPV test reveals that it would be more profitable for the servicer to foreclose. This is not the case for non-GSE loans. For those loans, as noted, a servicer is not required to modify where the NPV test reveals that the servicer would make less of a profit.

### C.     Facts and Procedural History

On November 2, 2005, Verna and Mosell Thomas executed a note and mortgage in connection with their purchase of the Property. *See Certification Re Post-Petition Payment History on the Note and Mortgage Dated 11/02/05*, Bankr. Case No. 10-48206-RTL at ¶ 10 (March 3, 2011), Exh. 1.[3] After experiencing financial hardship, they filed for Chapter 13 bankruptcy protection on December 10, 2010. Their proposed Chapter 13 Plan did not include any payments directed to the Property. Bankruptcy Docket No. 10-48206, Docket Entry No. 10 ("Chapter 13 Plan") at 1. Instead, they sought to obtain a modification for their mortgage on the Property.

Several months after the Plan was filed, American Servicing Company, servicer for U.S. Bank, filed a motion for relief from the automatic bankruptcy stay imposed by 11 U.S.C. § 362(d). Appellants did not appear on the hearing date, and the Bankruptcy Judge granted the motion for relief from the stay. Thereafter, Appellants filed a motion for reconsideration which the Bankruptcy Judge denied. It is from this denial that Appellants appealed.

As noted, I held in my February 28, 2012 decision that neither the Helping Families Act nor

---

[3]     The original lender on the mortgage was Eastern American Mortgage Company. *Id.* That lender assigned the mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), on the same date of the initial mortgage—November 2, 2005. *Id.* at Exh. 2. Thereafter, on December 12, 2005, MERS assigned the mortgage to U.S. Bank. *Id.* at Exh. 3.

the HAMP Guidelines force servicers to grant modifications prior to pursuing foreclosure.[4] I reasoned that numerous courts have held that the HAMP Guidelines do not create a private right of action, and that there is no viable third-party beneficiary theory under which Appellants could proceed. For these reasons, *inter alia* not at issue in this motion for reconsideration, I affirmed the Bankruptcy Court's denial of Appellants' motion for reconsideration of its order granting U.S. Bank relief from the automatic stay to pursue foreclosure on the Property.[5] I now turn to whether there is a basis for granting reconsideration of my decision.

## STANDARD OF REVIEW

When the District Court is acting as an appellate court in a bankruptcy case, "[b]ankruptcy Rule 8015 provides the sole mechanism for filing a motion for rehearing." *In re Lisanti Foods, Inc.,* No. 04-3868, 2006 WL 2927619, *4 (D.N.J. Oct. 11, 2006) (quoting *Matter of Eichelberger,* 943 F.2d 536, 538 (5th Cir. 1991)). *See also In re Rashid*, 210 F.3d 201, 204-05 (3d Cir. 2000) *superceded by statute on other grounds as stated in In re Thompson*, 418 F.3d 362 (3d Cir. 2005). Rule 8015 provides:

> [A] motion for rehearing may be filed within fourteen days after entry of judgment of the district court .... If a timely motion for rehearing is filed, the time for appeal to the court of appeals for all parties shall run from the entry of the order denying rehearing or the entry of a subsequent judgment.

Bankr. Rule 8015. While Rule 8015 provides a mechanism for rehearing bankruptcy rulings, it does

---

[4] While Appellants did not specifically reference the HAMP Guidelines, I construed their Helping Families Act argument as encompassing those guidelines.

[5] In this connection, I note that, while the Helping Families Act provisions and the HAMP Guidelines are directed at servicers, the proper plaintiff in a New Jersey foreclosure action is the lender, *see U.S. Bank*, 209 N.J. at 474, which, here, is U.S. Bank.

not set forth the standard of review for such motions.

In the absence of a Third Circuit standard, I have applied the standard articulated by *In re Lisanti Foods*, *supra*, which held that the standard applicable to an appellee's motion for rehearing should be "the test traditionally used to evaluate motions for reconsideration." 2006 WL 2927619 at *4. *See In re Dahlgren*, No. 09-18982 RTL, CIV.A. 10-1988 FLW, 2011 WL 2160884, *3 (D.N.J. Jun. 01, 2011). That test is whether: "(1) the court has "patently misunderstood a party," (2) the court has "made a decision outside the adversarial issues presented ... by the parties;" (3) the court has "made an error not of reasoning but of apprehension;" or (4) there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." Id. at * 4 (internal quotation marks omitted). I, again, adopt the *In re Lisanti Foods* standard here.

## DISCUSSION

In their motion for reconsideration, Appellants reassert the Helping Families Act challenge they asserted in connection with their original appellate briefs. Specifically, they argue that the Bankruptcy Court erred in granting U.S. Bank relief from the automatic bankruptcy stay because U.S. Bank was obligated to provide them with a mortgage modification application prior to instituting any foreclosure proceedings against the Property. Appellants further argue that "HUD law and rules prohibit Mortgage Companies from Profiting when they have violated HUD [and] Unfair Deceptive Acts and Practices . . . Statutes." Appellants Open Br. at 2. At the outset, the Court rejects Appellants' attempt to make an argument not previously presented in their appeal; in their appellate briefs, Appellants made no mention of HUD or unfair practices statutes. As the Court cannot reconsider an issue never raised, the Court will not address Appellate's HUD and unfair practices arguments.

### A.     Helping Families Act

Turning to the Helping Families Act argument, that argument was also addressed in the Court's February 28, 2012 Opinion and is, therefore, not an appropriate subject for a motion for reconsideration.  A motion for reconsideration must be premised upon the court patently misunderstanding a party, exceeding the scope of the issues presented by the parties, making an error of apprehension, or "a controlling or significant change in the law or facts since the submission of the issue to the Court."  *In re Lisanti Foods*, *supra* at *4.  Appellants have not met that standard here.  Nevertheless, in light of the evolving case law in this area, and for the sake of completeness, I address the substance of Appellants' argument.

Appellants seize on the following language from section 401(a) of the Act:

> It is the sense of Congress that . . . mortgage servicers should not initiate a foreclosure proceeding or a foreclosure sale on any homeowner until the foreclosure mitigation provisions, like the Hope for Homeowners program, as required under title II, and the President's ''Homeowner Affordability and Stability Plan'' have been implemented and determined to be operational by the Secretary of Housing and Urban Development and the Secretary of the Treasury.

Helping Families Act, 123 Stat. 1632, 1655, Sec. 401(a).  Appellants rely on this language to argue that a servicer may not institute foreclosure proceedings without first offering mortgagees a modification.

Contrary to Appellants' argument, nothing in the language of section 401(a) suggests that a servicer *must* offer a mortgagee a modification.  For one, as Defendant argues, this section is merely a "sense of Congress" provision—not a formal directive to servicers. *See Dunn-McCampbell Royalty Interest, Inc. v. National Park Svc.*, 630 F.3d 431, 441 n.16 (5th Cir. 2011) ("[A]lthough a sense of Congress provision can, in some instances, provide valuable assistance in interpreting

earlier legislation, such provisions are of limited legal effect.") (internal citation omitted); *Yang v. Cal. Dept. of Social Services*, 183 F.3d 953, 961 (9th Cir.1999) (describing a sense of Congress provision as "non-binding, legislative dicta"); *N.A.M.I. (National Alliance of Mentally Ill of Essex) v. Essex County Bd. of Freeholders*, 91 F.Supp.2d 781, 786 (D.N.J. Apr. 11, 2000) (referring to a "sense of Congress" provision as "precatory"). *See Fund for Animals, Inc. v. Kempthorne*, 472 F.3d 872, 876 (D.C. Cir. 2006) ("The sense of Congress provision does not in any way alter the plain text of the Reform Act's other [binding] provisions ...."). *Cf. Emergency Coalition to Defend Educational Travel v. U.S. Dept. of the Treasury*, 545 F.3d 4, 10 (D.C. Cir. 2008) ("[A] sense of Congress resolution is not law.").

Moreover, the language suggests that servicers institute a moratorium on foreclosures until the foreclosure mitigation programs developed by the Secretary of the Treasury and HUD go into effect. As explained above, the President's "Homeowner Affordability and Stability Plan" that spawned HAMP was implemented sometime in 2009 following the enactment of the Helping Families Act, and the Hope for Homeowners program went into effect in early 2010. Thus, when Appellants filed their bankruptcy petition in December 2010, those programs had already been operationalized. For this reason alone, section 401(a) could not have served as a bar to foreclosure and, more importantly, did not preclude the Bankruptcy Court from granting U.S. Bank leave to pursue foreclosure in this case. And, even if the aforesaid programs were not in operation at the time Appellants' bankruptcy petition was filed, at best, the language suggests that mortgage holders should *consider* modifications; the language does not suggest that modifications *must* be granted.

Appellants further cite to language in section 401(e), which they argue demonstrates the binding nature of section 401 of the Helping Families Act. Section 401(e) provides that

13

homeowners "for whose benefit any foreclosure proceeding or sale is barred under subsection (a) from being instituted . . . should respond to reasonable inquiries from a creditor or servicer during the period during which such foreclosure proceeding or sale is barred." *Id.* at Sec. 401(e). Even assuming this language is mandatory, it clearly refers back to section 401(a) which became irrelevant once the "Homeowner Affordability and Stability Plan" and H4H program went into effect. Thus, Appellants' reliance on section 401 is misplaced.

### B. HAMP

To the extent that Appellants intend to assert that U.S. Bank failed to comply with HAMP, and that this alleged failure precluded the Bankruptcy Court from granting U.S. Bank leave from the automatic stay, that argument fails. For one, Appellants have not argued, neither before this Court or the Bankruptcy Court, whether their mortgage was a GSE or non-GSE loan. (This can be determined through a simple search on Fannie Mae's website. *See* Fannie Mae Loan Lookup, www.fanniemae.com/loanlookup (visited Jun. 19, 2012).) This distinction is important because it determines whether U.S. Bank was required to participate in HAMP because Appellants' loan was a GSE loan, or if U.S. Bank chose to participate in HAMP through executing an SPA because Appellants' loan was a non-GSE loan. Furthermore, the HAMP obligations on servicers servicing GSE loans exceeds those placed on servicers when servicing non-GSE loans. While it appears from the motion papers before the Bankruptcy Court that the loan is not owned by Fannie Mae or Freddie Mac, Appellants should be cognizant of the nature of their loan when making HAMP-based arguments to the Court.[6]

---

[6] This Court's research revealed a copy of a non-GSE SPA executed by U.S. Bank online, *see* Commitment to Purchase Financial Instrument and Servicer Participation Agreement, www.hmpadmin.com/servicer/servicerparticipationagreement.pdf (visited Jun. 19, 2012), but even

More to the point, since my February 28, 2012 decision, federal courts have continued to hold that HAMP does not provide for a private right of action. *See*, *e.g., Wigod*, 673 F.3d at 555; *O'Connor v. First Alliance Home Mtg.,* Civil Action No. 12-111, 2012 WL 762351 (D.N.J. Mar. 6, 2012); *Cave,* 2012 WL 1957588, *4 n.4. Additional federal courts have held that the HAMP Guidelines, effectuated through the servicer's execution of an SPA, may not be enforced by a mortgagee under a third-party beneficiary theory.[7] *See In re Newell*, Bankr. No. 11–33861–EPK, 2012 WL 909200, *2 (Bkrtcy. S.D.Fla. Mar. 15, 2012) (collecting cases). These recent cases rely on the Supreme Court's 2011 decision in *Astra USA, Inc. v. Santa Clara County*, ––– U.S. ––––, 131 S.Ct. 1342, 179 L.Ed.2d 457 (2011), which held that an agreement designed to implement a federal program, whereby drug manufacturers opted into the program by executing the agreement, could not be enforced by beneficiaries of the program because, to rule otherwise, would obviate Congress' decision not to provide a private right of action to those beneficiaries. *See e.g., Wigod*, 673 F.3d at 559 n.4; *Newell*, 2012 WL 909200 at *2; *McInroy v. BAC Home Loan Servicing, LP*, No. 10–4342, 2011 WL 1770947 (D.Minn. May 9, 2011). That the Treasury Department has directed servicers not to proceed with a foreclosure sale until the borrower has been evaluated for HAMP and determined ineligible, *see* Supplemental Directive 09-01, *supra* at 14, does not alter my analysis. Any violation of the SPA or applicable HAMP Guidelines may be enforced only by the Treasury

---

assuming that document to be authentic and admissible here by way of judicial notice, it does not definitively determine the nature of Appellants' loan. As a servicer, U.S. Bank may service both non-GSE and GSE loans.

[7] To be clear, the third-party beneficiary argument applies only to non-GSE loans. As explained *supra*, servicers servicing GSE loans are obligated to comply with HAMP and are not required to execute an SPA.

Department, Fannie Mae, or Freddie Mac.[8]

Therefore, even if I were to reconsider to my ruling on Appellants' Helping Families Act challenge to the Bankruptcy Court's ruling, I would affirm my prior decision. I add one final note, however, to make clear that the Court is not without sympathy to those homeowners who experience difficulties in attempting to modify their mortgages in the midst of experiencing financial challenges. Legal commentators have argued that HAMP and similar foreclosure mitigation programs have failed to stem the growing, and apparently unending, tide of foreclosures. *See* Diane E. Thompson, *Foreclosure Modifications: How Servicer Incentives Discourage Loan Modifications*, 86 Wash. L. Rev. 755, 825-26 (2011). HAMP's non-GSE, SPA-based program has not produced a meaningful number of permanent modifications in its two-plus year existence due, in part, to the greater profit servicers obtain by foreclosing rather than by modifying a loan. *Id. See also Parker*, *supra* at *6 ("HAMP has thus far fallen well short of expectations." Because HAMP's NPV test incorporates that sort of cost-benefit analysis, a servicer can comply with its HAMP obligations yet still deny a mortgagee's application simply because the short term financial gain to the servicer weighs in favor of foreclosure.

Some have further argued that, in the absence of private rights of action, the Treasury Department should more vigorously enforce the HAMP Guidelines. Yet, thus far, that has not been the Department's approach. Richard E. Gottlieb and Brett J. Natarelli, *Update on Loan Modification*

---

[8] There is one caveat to this rule. Those mortgagees initially approved for a HAMP modification are placed in a Trial Period Plan ("TPP") for several months while a final modification decision is pending. Some courts have permitted mortgagees who had been granted a TPP, but denied a final modification, to bring breach of contact theories based on violation of language in the TPP agreement. *See, e.g., Wigod*, 673 F.3d at 555, 557. Appellants do not bring a TPP-based claim here, nor could they, because they contend that they were not given the opportunity to submit a modification application.

*Litig.*, 66 Bus. Law. 539, 549 (2011). *See also Parker*, *supra* at *7 (quoting United States Government Accountability Office ("GAO"), GAO–10–634, *"Troubled Asset Relief Program, Further Actions Needed to Fully and Equitably Implement Foreclosure Mitigation Programs"* (June 2010), pp. 14–27 ("GAO Report") available at  http://www.gao.gov/new.items/d10634.pdf).[9]  *See generally* GAO, GAO-11-433, *MORTGAGE FORECLOSURES: Documentation Problems Reveal Need for Ongoing Regulatory Oversight* (at 1 May 2011) ("Although various federal agencies have authority to oversee most mortgage servicers, past oversight of their foreclosure activities has been limited ...."). And, while at least one state has passed a law precluding foreclosure whenever HAMP Guidelines were not followed, *see id.* at 550 (discussing Illinois law), no such law has been enacted in New Jersey.  Perhaps, state or federal legislators will ultimately enact stronger protections for homeowners. *See id.* at 543 n.29 ("We could have demanded language . . . that would have empowered the Treasury to compel mortgage servicers to rework the terms of mortgage loans so homeowners could avoid foreclosure.") (quoting Rep. Dennis Kucinich, D-OH).  For today, however, the foreclosure mitigation law does not preclude U.S. Bank from instituting foreclosure against the Appellants.

---

[9]     The GOA Report explains:

> Treasury has taken some steps to ensure that servicers comply with HAMP program requirements, including those related to the treatment of borrowers, but has yet to establish specific consequences or penalties for noncompliance with HAMP guidelines.... Without standardized remedies for noncompliance, Treasury risks inconsistent treatment of servicer noncompliance and lacks transparency with respect to the severity of the steps it will take for specific types of noncompliance.

*Id.* (quoting GAO Report at 27).

## CONCLUSION

For the foregoing reasons, Appellants' motion for reconsideration is DENIED.


Dated: June 22, 2012                                    /s/ Freda Wolfson
                                                        Honorable Freda L. Wolfson
                                                        United States District Judge